IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-42271-TLS |
| | ) | |
| GARY M. BURIVAL and | ) | CH. 11 |
| JOYCE BURIVAL, | ) | |
| | ) | |
| Debtors. | ) | |
| IN THE MATTER OF: | ) | CASE NO. BK07-42273-TLS |
| | ) | |
| RICHARD BURIVAL and | ) | CH. 11 |
| PHILLIP BURIVAL, d/b/a | ) | |
| Burival Brothers, a partnership, | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| Debtors. | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on June 25, 2009, on Debtors' Final Application for Fees and Expenses (Fil. #1155) and Final Application for Compensation (Fil. #1159), Resistances filed by the U.S. Trustee (Fils. #1169 and #1170), Resistances filed by the Chapter 11 Trustee (Fils. #1171 and #1172), a Resistance filed by the Committee of Unsecured Creditors (Fil. #1173), an Objection filed by Galyen Petroleum Company (Fil. #1174), an Objection filed by O'Neill Fertilizer, Inc. (Fil. #1175), a Resistance by James R. Maly (Fil. #1176), and an Objection filed by James Widtfeldt (Fil. #1195).

William L. Needler appeared on behalf of Debtors and as applicant in each case; Rick D. Lange appeared as the Chapter 11 Trustee; Jerry L. Jensen and Patricia Fahey appeared for the U.S. Trustee; Shawn Dontigney appeared for John Guthery on behalf of the Committee of Unsecured Creditors; Jeffrey P. Galyen appeared for Galyen Petroleum Company; Richard P. Garden, Jr., appeared for O'Neill Fertilizer, Inc.; Wayne E. Griffin appeared for James R. Maly; and James Widtfeldt appeared pro se.

Mr. Needler has filed his final fee applications as attorney for Debtors in this jointly administered case. In the main case of Gary and Joyce Burival, he is seeking final approval for total attorney fees and costs of $288,071.60. In the case of Richard and Phillip Burival, Mr. Needler is seeking final approval for total attorney fees and costs of $85,295.72. Thus, Mr. Needler's fee applications total $373,367.32 combined. Of those amounts, a total of $271,253.10 has already been approved through interim fee applications. The record is not clear as to how much has already been paid to Mr. Needler, but it is at least $133,000.00.

The bankruptcy court has broad power and discretion to award or deny attorney fees and a duty to examine them for reasonableness. *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 863 (8th Cir. 2000). The movant bears the burden of proving that he is entitled to compensation under 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016(a). *Chamberlain v. Kula (In re Kula)*,

213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). "Whether the compensation sought is reasonable, given the time, nature, extent of the services and the value of the services is always a question of fact for the court." *Id.* at 735 (quoting *In re Jelinek*, 153 B.R. 279, 284 (Bankr. D.N.D. 1993)).

When calculating an applicant's "reasonable fee" under 11 U.S.C. § 330, the bankruptcy court must start with the lodestar calculation.[1] *Id.* at 739. "[T]he lodestar method of fee calculation is the preferred method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees." *Id.* at 736. When making an award of professional fees, the court must either make an express lodestar calculation or make a finding that the lodestar method is inappropriate under the circumstances. *Id.*

In making the lodestar calculation, the court must make a finding as to whether the number of hours billed were reasonable in light of the complexity of the case, and then multiply that by a reasonable hourly rate for those services. *Id.* at 737. In determining what constitutes a reasonable and proper fee in a given case, judges may rely on their own knowledge of customary rates and experience. *Bachman v. Pelofsky (In re Peterson)*, 251 B.R. 359, 365 (B.A.P. 8th Cir. 2000). Adjustments to the lodestar amount may be made in rare and exceptional circumstances based on the quality of the representation or the results obtained. *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 732 (8th Cir. 1992). For guidance in making this assessment, the court may consider the factors[2] enumerated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to the extent they are not already accounted for in the lodestar amount. *Kula*, 213 B.R. at 738.

The court need not analyze the time spent on any given task to determine whether it is excessive, but may consider generally whether the nature of the case was routine and whether the fees requested are in line with those typically charged. *Bachman v. Laughlin (In re McKeeman)*, 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999). Fees requested may be reduced on a number of grounds, including a finding that the debtor was billed for unnecessary or duplicative services, *In re AOV Indus., Inc.*, 797 F.2d 1004, 1008 (D.C. Cir. 1986), for tasks that could have been performed by assistants, *Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 499 (B.A.P. 1st Cir. 1997), or for time not reasonably expended to benefit the bankruptcy estate. *Advanced Microbial Solutions, L.L.C. v. O'Neal (In re Advanced Microbial Solutions, L.L.C.)*, 306 B.R. 915, 920 (E.D. Tex. 2004). Vague fee applications that "camouflage" the amount of time spent on each task and

---

[1]The lodestar amount is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 730-31 (8th Cir. 1992).

[2]The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

hinder the court's scrutiny of the reasonableness of the time expended can lead to reduced fee awards. *In re Baker*, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007). Fees awarded for time spent traveling in connection with the case may be reduced. *McKeeman*, 236 B.R. at 672.

The Chapter 11 Trustee, the U.S. Trustee, and creditors of both the secured and unsecured variety have objected to these final fee applications. The objectors all feel that Mr. Needler's fees are excessive, particularly when considering the results obtained. They point to the fact that Debtors were never able to obtain approval of a disclosure statement, much less a plan. They point out that Debtors lost a substantial amount of money on operations in 2008, and that a Chapter 11 Trustee has now been appointed. Essentially, the objectors seem to be blaming the attorney for the "failure" of this Chapter 11 case and request that no further fees be approved and that no further payments be made.

Contrary to the claims of the objecting parties, this Court does not believe that liquidation of this estate was "inevitable." In fact, when this case commenced, it seemed that confirmation of a Chapter 11 plan was inevitable. Debtors owned substantial real estate with equity, as well as farm animals, fixtures, furnishings, and equipment. Grain prices were on the rise and Debtors were able to reject contracts to deliver grain for a below-market price, resulting in substantial additional income. Debtors seemed to have all the pieces in place for a successful reorganization. However, from the start, many of the parties objecting to this fee application objected to virtually every action taken by Debtors in possession. There was little or no cooperation between and among Mr. Needler and the objectors. Does Mr. Needler deserve some of the blame for that? Certainly. However, he does not deserve all of the blame. A little bit of cooperation could have gone a long way in this case.

It is also important to recognize that while the objectors did not necessarily agree with the manner in which Mr. Needler handled the jointly administered cases, the parties involved, including this Court, were not privy to all of the facts and underlying discussions and efforts in the case. It is inappropriate to second-guess the actions taken by Mr. Needler without knowing all of the facts leading up to those actions. For example, one of the primary objections filed was that Debtors lost substantial money on 2008 operations. For some reason, they consider the poor 2008 performance to be the fault of the attorney. In fact, the poor 2008 performance was due to a sharp decline in grain prices from the high levels of 2007 and early 2008. It simply is not fair to blame the Debtors' attorney for the results of business decisions made by Debtors in possession. The attorney does not run the business; the attorney can only advise Debtors in possession.

Having reviewed the fee applications, I have three areas of concern. The first is with regard to travel time. Mr. Needler's fee applications include $20,922.70 in fees and costs charged for "travel time." Mr. Needler maintains an office in Ogallala, Nebraska. It seems inequitable and inappropriate for an attorney having an office in the state of Nebraska, and practicing in the state of Nebraska, to seek reimbursement from Debtors in possession for travel time when traveling from outside the state to the state of Nebraska. As an attorney who has a Nebraska office but actually lives and spends most of his time in another state (in this case, North Carolina, it seems), some or even most of the cost of traveling to Nebraska is simply a cost of doing business when he chooses to file a case in this state. Unfortunately, it is difficult, if not impossible, to discern from the fee applications how much was charged for travel to the state as opposed to travel within the state.

My next area of concern deals with the issues surrounding the leases held by Debtors as of the commencement of the case. Clearly, Mr. Needler did not have a handle on what leases the Debtors held at the commencement of the proceeding, the terms of those leases, the effect of lease expiration, and the ramifications of assumption and rejection. The Eighth Circuit Bankruptcy Appellate Panel raised such concerns in its recent opinion regarding an appeal in this case when it said that debtors contemplating bankruptcy must take lease obligations into consideration when timing the filing of their petitions. *Burival v. Creditor Comm. (In re Burival)*, 406 B.R. 548, 554 (B.A.P. 8th Cir. 2009). Mr. Needler holds himself out as an attorney who specializes in filing Chapter 11 cases for farmers. Surely, he is aware of the need to have a handle on lease obligations prior to filing a case.

Mr. Needler asserts that he was simply not aware of many or most of the leases at the time he filed this proceeding. However, once he did become "aware" of the leases, Mr. Needler filed motions to assume virtually all of the leases despite the fact that Debtors had no ability to cure the outstanding defaults under those leases. Ultimately, the leases were rejected as a result of expiration of time, but all of the obligations arising under the leases until the date of rejection became administrative claims against Debtors.[3] There is no question in this Court's mind that the issues with respect to the leases could have been handled better, more timely, and more efficiently. The total amount of fees and expenses Mr. Needler seeks for this category, including an appeal, is $64,068.75. Unfortunately, it is impossible for this Court to determine based on the record how much time "should" have been spent on the lease-related issues, but given the results obtained, it should have been much less.

The third area of concern deals with the fact that virtually every motion filed by Mr. Needler was filed on an "emergency" basis. However, the emergencies often were not emergencies at all or were emergencies only because Mr. Needler failed to file the motions in a more timely manner. Again, it is impossible to determine how much time was spent on preparation of emergency motions and requests for shortened notice that could have been avoided if Mr. Needler's law office had been sufficiently staffed to handle a case of this magnitude.

Some of the objecting parties also objected to the allocation of Mr. Needler's fees and costs between the two jointly administered cases. Throughout this case, Debtors have proposed an 80/20 allocation and no party has objected until now. However, the objections do not propose a different allocation. This Court is not inclined to change at this late date what has been an accepted practice in this case.

As indicated, I disagree with many of the issues raised by the objecting parties. None of the objectors have objected to Mr. Needler's hourly rate, and I find that his hourly rate of $255.00 is reasonable. However, based on the three areas of concern discussed above, I find that the total number of hours billed are not reasonable and, therefore, a reduction in fees is warranted. Unfortunately, there does not appear to be a precise methodology for determining the appropriate

---

[3]*Burival*, 406 B.R. at 555.

reduction based on the record.  The total fee allocations related to travel and lease issues were approximately $80,000.00, but as discussed above, determining the appropriate amount for those categories is impossible.  It is also impossible to say how much time was spent on "emergency" motions that were not really emergencies or were only emergencies due to dilatory action.  Therefore, a straight lodestar approach is not appropriate in this case.  Given such limitations and considering the totality of the circumstances, I find that a $40,000.00 reduction in the total fees requested is appropriate.  Using the 80/20 split that has become common in this case, the reduction in the Gary and Joyce case shall be $32,000.00, and in the Richard and Phillip case the reduction shall be $8,000.00.

The final issue to be addressed is payment.  Mr. Needler wants to be paid now for all of his approved fees and costs.  However, as stated many times before, it is not at all clear to this Court whether this case is administratively solvent.  For that reason, the Chapter 11 Trustee has objected to payment of any further administrative expense claims until such time as the administrative solvency of the estate is determined.  I agree.  Therefore, this Court's prior orders denying further payment of administrative expense claims shall continue to be enforced.

IT IS, THEREFORE, ORDERED that the final fee application of William L. Needler & Associates in the lead case is approved in the reduced amount of $48,614.75 ($80,614.75 minus $32,000.00) for fees and costs, which amount is in addition to amounts previously approved under interim applications.  The final fee application of William L. Needler & Associates in the jointly administered case of Richard and Phillip Burival is approved in the reduced amount of $13,493.47 ($21,493.47 minus $8,000.00) for fees and costs, which amount is in addition to amounts previously approved under interim applications.  However, no further payment shall be made with respect to the approved fees and costs until further order of this Court.

DATED:  July 21, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *William L. Needler
    Rick D. Lange
    Jerry L. Jensen/Patricia Fahey
    Shawn Dontigney/John Guthery
    Jeffrey P. Galyen
    Richard P. Garden, Jr.
    Wayne E. Griffin
    James Widtfeldt
Movant (*) is responsible for giving notice to other parties if required by rule or statute.